IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Semcon IP Inc., | Civil Action No. 2:16-cv-00437 |
| Plaintiff, | |
| | (LEAD CASE) |
| vs. | |
| Huawei Device USA Inc., et al., | Jury Trial Demanded |
| Defendants. | |
| Semcon IP Inc., | Civil Action No. 2:16-cv-00439 |
| Plaintiff, | |
| | (CONSOLIDATED CASE) |
| vs. | |
| STMicroelectronics, Inc., | |
| Defendant. | Jury Trial Demanded |

**STMICROELECTRONICS, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATION ON ITS MOTION TO DISMISS FOR LACK OF STANDING OR, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**Table of Contents**

I.      Introduction ....................................................................................................................1

II.     Background .....................................................................................................................1

        A.      The PSA and Security Interest Fail to Transfer All Substantial Rights to the
                Patents-in-Suit from IV16 to Semcon ..............................................................1

                1.      *IV16 Transferred the Patents-in-Suit Subject to a Fatal Restriction on
                        Semcon's Right to Dispose of the Transferred Patent Rights.* ....................1

                2.      *IV16 Retained Critical Future Licensing Rights and Limited Semcon's
                        Authority to License the Patents-in-Suit* ......................................................3

        B.      Semcon's Complaint Fails to Plead Sufficient Facts to Support its Direct
                Infringement Claims for the Power Management Patents and to Support its
                Indirect Infringement Claims ............................................................................5

III.    Applicable Law ...............................................................................................................6

        A.      Standard of Review ............................................................................................6

        B.      The Exclusionary Right Granted by the Patents-in-Suit Must Be Enforced
                By the Party With All Substantial Rights ..........................................................6

        C.      Semcon's Complaint Must Demonstrate Some Basis for its Allegation and
                Allege Specific Facts in Support of Each Claim ...............................................8

IV.     Argument ........................................................................................................................9

        A.      Semcon Lacks Prudential Standing to Enforce the Patents-in-Suit. ................9

                1.      *IV Failed to Transfer All Substantial Rights in the Patents to Semcon* .......9

                2.      *IV16 Retained Future Licensing Rights to the Patents-in-Suit and Limited
                        Semcon's Ability to License the Patents.* ...................................................10

                3.      *The Current Right to Enforce the Patents-in-Suit is Not Dispositive With
                        Respect to the Standing Inquiry.* ...............................................................12

        B.      Semcon's Complaint Fails to State a Claim Upon Which Relief Can Be
                Granted .............................................................................................................13

V.      Conclusion ....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*,
604 F. 3d 1354 (Fed. Cir. 2010).............................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................8, 14, 15

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012).............................................................................................15

*Bowlby v. City of Aberdeen*,
681 F.3d 215 (5th Cir. 2012) ...............................................................................................8

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ...........................................................................................8, 14

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
No. 6:14-cv-752, 2015 WL 4910427 (E.D. Tex. Aug. 13, 2016).................................8, 14, 15

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
No. 14-CV-911, 2016 WL 1106442 (E.D. Tex. Mar. 20, 2016) ...............................................6

*DSU Med. Corp. v. JMS Co., Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006)...........................................................................................14

*Intellectual Prop. v. TCI Cablevision*,
248 F. 3d 1333 (Fed. Cir. 2001)............................................................................................7

*IP Innovation L.L.C. v. Google, Inc.*,
661 F. Supp. 2d 659 (E.D. Tex. 2009) .................................................................................11

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007)............................................................................................8

*MediaTek, Inc. v. Sanyo Elec. Co. Ltd.*,
No. 6:05-cv-323, 2007 WL 5186792 (E.D. Tex. Apr. 16, 2007) ................................9, 11, 12

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)........................................................................................7, 13

*Pfizer Inc. v. Elan Pharm. Research Corp.*,
812 F. Supp. 1352 (D. Del. 1993).......................................................................................7, 9

*Prima Tek II, LLC v. A-Roo Co.*,
    222 F. 3d 1372 (Fed. Cir. 2000).........................................................................7, 11

*Propat Int'l Corp. v. RPost Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007)..............................................................................9

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005)........................................................................7, 9, 10

*Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
    No. 2:13-cv-38-JRG, 2014 WL 894805 (E.D. Tex. Mar. 4, 2014). Dkt. 23-11 .....................15

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
    No. 6:12-cv-366, 2013 WL 8482270 (E.D. Tex. Mar. 3, 2016) .....................................8, 9, 15

*Uniloc USA Inc. v. Avaya Inc.*,
    No. 6:15-cv-1168, slip op. (E.D. Tex. May 13, 2016) ...............................................8

*United States v. Wilson*,
    864 F.2d 1219, 1989 WL 3792 (5th Cir. 1989) ......................................................6

*Washington v. Plano ISD*,
    No. 4:15-CV-789, 2017 WL 73953 (E.D. Tex. Jan. 9, 2017)..................................6

**Statutes**

28 U.S.C. § 636(b)(1) ...............................................................................................6

35 U.S.C. § 271(a) .................................................................................................8

35 U.S.C. § 281 ....................................................................................................7

Del. Code Ann. tit. 6, § 9-610...............................................................................3

**Other Authorities**

Fed. R. Civ. P. 12 ...................................................................................................1

Fed. R. Civ. P. 12(b)(1).........................................................................................15

Fed. R. Civ. P. 12(b)(6).........................................................................................15

Fed. R. Civ. P. 12(b)(7).........................................................................................15

Fed. R. Civ. P. 19(a) ...........................................................................................7, 13

Fed. R. Civ. P. 72(b) .............................................................................................6

Local Rule CV-5(a)(3).........................................................................................17

STI'S OBJECTIONS TO REPORT AND RECOMMENDATION ON ITS MOTION TO DISMISS          iii

## I.    Introduction

Defendant STMicroelectronics, Inc. ("STI") respectfully objects to the Report and

Recommendation ("R&R") to deny STI's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (Dkt.

No. 32).  The R&R erred in finding that Semcon IP Inc. ("Semcon") has prudential standing to

maintain its actions without joining Intellectual Ventures Assets 16 LLC ("IV16"), a remedy that

STI specifically requested in its Motion in the event it was denied.  STI will be severely

prejudiced should the Court adopt the R&R without, at the very least, joining necessary party

IV16.  The R&R further erred in finding that the allegations in Semcon's Complaint are

sufficient to state a claim for direct and indirect infringement.  For the reasons set forth below

and in STI's Motion, Reply and accompanying papers (Dkts. No. 22, 23 and 27), the Court

should not adopt the R&R.  Instead, upon *de novo* review, Semcon's Complaint should be

dismissed or, alternatively, IV16 should be joined as a necessary party.

## II.   Background

### A.    The PSA and Security Interest Fail to Transfer All Substantial Rights to the Patents-in-Suit from IV16 to Semcon

> *1.    IV16 Transferred the Patents-in-Suit Subject to a Fatal Restriction on Semcon's Right to Dispose of the Transferred Patent Rights.*

This case involves patent infringement claims with respect to U.S. Patent Nos. 7,100,061;

7,596,708; 8,566,627, and 8,806,247 (collectively, the "power management patents") and

5,978,876 (the "bus controller patent").  Semcon purports to own full title and all substantial

rights to the patents by virtue of a patent sale agreement ("PSA") between IV16 and Quest Patent

Research Corporation ("Quest") and the subsequent assignment from Quest to Semcon.  *See* Dkt.

23-8, 9.  Semcon's Opposition to STI's Motion revealed, for the first time, that IV16 and Quest

executed seven further addenda to the PSA, five of which have yet to be produced in this case.[1]

The two disclosed addenda (Dkt. 26-2) purport to amend the PSA to give Quest permission to

transfer the patents-in-suit to Semcon, provided that Semcon execute an additional security

interest in favor of IV16 and identical to that executed by Quest.

The IV16 security interest imposes certain key restrictions regarding the disposition of

the assigned patent rights, and these restrictions demonstrate that Semcon lacks all substantial

rights.  First, until the full $3 million purchase price is satisfied, Semcon "may not (i) sell,

exclusively license, transfer, assign or otherwise dispose of the [relevant patents], or (ii) grant

licenses under the [relevant patents] that include sublicense rights except for rights to grant

sublicenses to subsidiaries of such licensee . . . without [IV16's] prior written consent."  Dkt. 26-

2, Exhibit 1 at ¶ 2.  Second, if IV16 is willing to consent to any disposition of the assigned patent

rights, Quest must first satisfy all outstanding payment obligations before receiving such consent.

*Id.*  Therefore, IV16 retains its security interest, and Semcon remains unable to dispose of its

patent rights, until Quest satisfies the obligation to pay the full $3 million patent purchase price.

The agreements further provide that in the event of default by non-party Quest or Semcon

of the security interest, PSA, or "any of the other Obligations"; the cessation of Quest's business

operations, insolvency, bankruptcy; or an admission in writing of Quest's inability to pay its

debts, IV16 has the right to "pursue the remedies provided herein and any other remedies

---

[1] The R&R suggests there is confusion regarding STI's constitutional and prudential standing arguments.  STI raised both constitutional and prudential standing objections in its Motion based on publicly available information regarding the sale and its prohibition against the assignment of the patents-in-suit to Semcon.  Such information suggested Semcon lacked legal title to the patents.  Semcon then produced non-publicly available addenda to the PSA in opposition to STI's Motion, such addenda purporting to grant Quest permission to transfer the patents to Semcon.  In response, STI's Reply argued that Semcon merely stepped into the shoes of Quest, still lacks substantial rights to the patents-in-suit and therefore lacks prudential standing.

available under applicable laws or in equity, including, without limitation, the remedies of a secured party under the applicable UCC." (Dkt. 23-9 at ¶5, 6; Dkt. 26, Ex. 1 at ¶¶ 5, 6).[2] These remedies as those available under the Delaware Commercial Code because Delaware law governs the PSA. *See* Dkt. 023-9 at ¶ 6.3. Under the Delaware Commercial Code, a secured party may sell license, or otherwise dispose of any or all of the collateral upon default. 2016 Del. Code Ann. tit. 6, § 9-610 (West). IV16 therefore has a reversionary interest to the patents-in-suit allowing them to sell or retain the patents following default by Quest and/or Semcon.

> 2. *IV16 Retained Critical Future Licensing Rights and Limited Semcon's Authority to License the Patents-in-Suit*

Despite a self-serving statement in the PSA claiming "no retention of substantial rights," IV16 did, in fact, retain substantial rights and transferred the patents-in-suit subject to the afore-mentioned security interests in favor of IV as well as several critical licensing restrictions. Ex. 9, Agreement at ¶ 3.3. Specifically, IV16 retained <u>future</u> licensing rights with respect to "Prior Rights Holders" and future Extension Rights.

The agreement provides IV16 "Extension Rights," including the right to renew and extend the term of any licenses or covenants not to sue granted by IV16 and/or its affiliates, as well as the right to modify or amend any such licenses or covenants not to sue in accordance with an obligation contained therein. Id. at ¶ 1.[3] The agreement further provides that, if IV16 or

---

[2] Quest's most recent 10-Q reports that "As of September 30, 2016, we have an accumulated deficit of approximately $15,233,000 and a negative working capital of approximately $354,275." Quest Patent Research Corp. 10-Q, Published 11/14/16.

[3] Quest also granted IV16 and its affiliates "a time-limited option to grant and authorize a nonexclusive sublicense" to any "Optional Licensee," including "the right to renew, modify, amend, or extend the license . . . but only to the extent necessary to extend the license term or add parties which are Affiliates of an Optional Licensee." Such "Optional Licensees" are not prior rights holders. It is unclear whether IV16 granted any licenses to "Optional Licensees," as Semcon has failed to produce a complete and final set of documentation for the patent sale, assignment and financing.

any of its affiliates has a contractual liability to a party holding Existing Rights or a beneficiary of such a party, in addition to "Extension Rights," IV16 and its affiliates have a "right to grant a limited, nonexclusive, perpetual, irrevocable, royalty-free, fully paid-up right and license (without geographic restriction), under the [relevant patents], to any Prior Rights Holder to make, have made, use, sell, offer for sale, import, and otherwise commercialize any product or service," to extent necessary to eliminate any liability IV16 or any of its affiliates may have to such a rights holder.  IV16 and its affiliates explicitly received the rights to (1) extend the duration of Existing Rights, (2) extend Existing Rights to Affiliates of the holders of such Existing Rights, and (3) to enter into a license agreement with "Optional Licensees."  *Id.* at ¶ 3.1(b).[4]

It is indisputable that the agreements do not require Quest or Semcon to "step into the shoes of IV16" and take the patents subject to an obligation to negotiate renewals or extensions of prior licenses.  Rather, IV16 itself retained the right to renew, extend, modify or amend certain licenses or covenants not to sue with prior rights holders.  STI believes such Prior Rights Holders include, but are not limited to, Intel, Nvidia, Sony, Fujitsu, NEC Corporation of America, and Nikon, but, to date, Semcon has not produced any such licenses.  Thus, these and other parties may have licenses or covenants not to sue under one or more of the patents-in-suit that are subject to renewal, extension or modification by IV16 or its numerous affiliates.

---

[4] "Prior Rights Holders" under the Agreement include anyone "(1) who is a beneficiary of Existing Rights, or (2) a pre-existing licensee to the [relevant patents] under an Existing Right."  Ex. 9 at ¶ 3.1(b).  The Existing Rights include "the existing licenses, sublicenses, and other rights and obligations under the [relevant patents] that have been granted or retained by [IV16], Affiliates of [IV16], or prior owners or inventors of the [relevant patents] prior to the Effective Date."  *Id* at ¶ 1.

**B.      Semcon's Complaint Fails to Plead Sufficient Facts to Support its Direct Infringement Claims for the Power Management Patents and to Support its Indirect Infringement Claims**

Semcon's generic pleadings related to both direct and indirect infringement fail to plead facts sufficient to provide STI with fair notice as to its allegations.  With respect to its direct infringement allegations for the power management patents, Semcon includes a single paragraph that it repeats for each of the four patents, asserting that STI directly infringed its patents "by making, using, offering to sell, selling and/or importing" infringing products, including "any and all chipsets with ARM Cortex-A5, Cortex-A7, and Cortex-A9 processor designs that use DVFS for power management.  Upon information and belief, these products include at least the SPEAr1300 series microprocessors including the SPEAr1340."  Compl. at ¶22, 31, 40, 49. Semcon defines an accused function "DVFS" or Dynamic Voltage and Frequency Scaling, as "a technique where the voltage used in a component is increased or decreased in order to increase performance or conserve power, depending on the circumstances."  Compl. at ¶ 15.  The term "DVFS" does not appear in any asserted claim of the four power management patents.

With respect to indirect infringement, Semcon's Complaint merely offers a restatement of the statutory elements of induced and contributory infringement.  Specifically, Semcon makes the conclusory allegation that STI knowingly and intentionally induced others to directly infringe or contributed to the direct infringement of others "by making, using, offering to sell, selling and/or importing" infringing products, including either (1) chipset products such as the SPEAr1300 series microprocessors including the SPEAr1340 for the power management patents or (2) products including STMicroelectronics microcontrollers such as the STM32L151 product line for the bus controller patent.  Compl. at ¶¶ 23, 32, 41, 50, 59.  Semcon further avers that STI induced end users to infringe "by supplying chipsets to others for inclusion in their products . . . with the intent to cause infringing acts by others or, in the alternative, with the belief that there

was a high probability that others, including end users, infringe the [patent-in-suit], but while remaining willfully blind to the infringement."  Compl. at ¶¶ 24-25, 32-34, 42-43, 51-52, 60-61.

Likewise, Semcon makes the conclusory claim that STI knowingly and intentionally contributed to the direct infringement of the patents-in-suit by supplying chipsets or microcontrollers "that embody a material part of the claimed invention . . . that are known by the Defendant to be specially made or adapted for use in an infringing matter, and are not staple articles with substantial non-infringing uses."  Compl. at ¶¶ 26, 35, 44, 53, 62.  Semcon pleads no additional facts to support its indirect infringement allegations, fails to identify specific culpable acts by STI, and fails to identify any alleged direct infringers.

## III.    Applicable Law

### A.    Standard of Review

"Under the plain language of 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and all of the relevant cases, a district court must engage in *de novo* review where a party has objected to a magistrate's decision." *United States v. Wilson*, 864 F.2d 1219, 1221, 1989 WL 3792 (5th Cir. 1989); *see also Washington v. Plano ISD*, No. 4:15-CV-789, 2017 WL 73953, at *2 (E.D. Tex. Jan. 9, 2017); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 14-CV-911, 2016 WL 1106442, at *1 (E.D. Tex. Mar. 20, 2016).

### B.    The Exclusionary Right Granted by the Patents-in-Suit Must Be Enforced By the Party With All Substantial Rights

A party may hold the exclusive right to make, use, and sell the patented invention, but may lack prudential standing if it cannot enforce its exclusionary right by itself.  *See id*. at 1340. This is because the exclusionary right granted by the Patent Act must be enforced by the patent owner, and the "owner" of a patent is the party who "holds all rights or all substantial rights" to the patent.  *Id.*  Therefore, Semcon may have exclusionary rights but lack prudential standing if it

does not have all substantial rights to the patents-in-suit. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007); *Prima Tek II, LLC v. A-Roo Co*., 222 F. 3d 1372, 1380 (Fed. Cir. 2000) ("[W]here the patentee makes an assignment of all substantial rights under the patent, the assignee may be deemed the effective 'patentee' under 35 U.S.C. § 281 and thus may have standing to maintain an infringement suit in its own name.").

While Federal Circuit precedent instructs that the exclusive right to practice a patent, combined with the exclusive right to sue for infringement, is "the most important consideration" in determining whether a party possesses all substantial rights, *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp*., 604 F. 3d 1354, 1362 (Fed. Cir. 2010), this right is not dispositive. As explained in the R&R, "[t]he inability to dispose of property, including patents, has always been an important indicia of ownership." Dkt. 73 at 8.  In fact, the Federal Circuit has characterized restrictions on the right to assign a patent as "fatal" to the transfer of all substantial rights. *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005) (*citing Calgon Corp. v. Nalco Chemical Co*., 726 F. Supp. 983, 988 (D. Del. 1989) ("Just as the right to alienate personal property is an essential incident of ownership, the right to further assign patent rights is implicit in any true assignment.")); *Intellectual Prop. v. TCI Cablevision*, 248 F. 3d 1333, 1345 (Fed. Cir. 2001); *Pfizer Inc. v. Elan Pharm. Research Corp*., 812 F. Supp. 1352, 1373 (D. Del. 1993) ("In light of this harsh restriction on alienation in the present case, this Court need look no further in determining that Bayer reserved substantial rights under the Agreement.).

To establish prudential standing without all substantial rights, a plaintiff can join the patentee or owner who transferred the exclusionary interests.  *Morrow*, 499 F.3d at 1340.  Such joinder limits the possibility of multiple suits brought against a defendant for a single act of infringement.  *Id.*; *see also* Fed. R. Civ. P. 19(a).

C.     **Semcon's Complaint Must Demonstrate Some Basis for its Allegation and Allege Specific Facts in Support of Each Claim**

To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent." 35 U.S.C. § 271(a); *Bowlby v. City of Aberdeen*, 681 F.3d 215, 217 (5th Cir. 2012). Importantly, such a complaint must give a defendant sufficient notice as to what he must defend. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). Conclusory statements that recite the elements of an infringement claim are not entitled to a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

For induced infringement, a complaint must "1) adequately plead direct infringement by defendant's customers; 2) contain facts plausibly showing that defendant specifically intended for its customers to infringe the asserted patents; and 3) contain facts plausibly showing that defendant knew that the customers' acts constituted infringement." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-752, 2015 WL 4910427, *3 (E.D. Tex. Aug. 13, 2016) (*citing Bill of Lading*, 681 F.3d at 1339). Showing "knowledge of infringement alone, however, is not enough. Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Uniloc USA Inc. v. Avaya Inc.*, No. 6:15-cv-1168, slip op. at 4 (E.D. Tex. May 13, 2016) (internal quotation omitted). In addition, the mere allegation that a defendant supplies allegedly infringing items to others is insufficient. *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366, 2013 WL 8482270, at *4 (E.D. Tex. Mar. 3, 2016).

For contributory infringement, a complaint must plead facts sufficient to support a plausible claim there is 1) an act of direct infringement; 2) that the defendant knew its

components were made for a patented and infringing combination; and 3) "that the components have no substantial non-infringing uses."  *See id*. (citation and internal quotes omitted).

IV.   **Argument**

    A.   **Semcon Lacks Prudential Standing to Enforce the Patents-in-Suit.**

        *1.   IV Failed to Transfer All Substantial Rights in the Patents to Semcon*

The R&R and Semcon's Opposition focus on the rights that IV16 purportedly did transfer, including enforcement rights, the current right to control litigation, and the right to remedies.  Dkt. 32 at 7-8; Dkt. 26 at 5-9.  However, the precedent of both the Federal Circuit and this Court clearly establishes that the right to transfer an asset is critical to the question of standing.  The Federal Circuit in *Sicom Systems Ltd. v. Agilent Tech., Inc.* could not have stated it more clearly: "As the district court found, 'the restriction on Sicom's right to assign' was a 'fatal reservation of rights by Canada."  427 F.3d 971, 979 (Fed. Cir. 2005) (internal citation omitted).  In fact, the court "need look no further in determining that [IV16] reserved substantial rights under the Agreement."  *Pfizer*, 812 F. Supp. at 1373; *see also*, *Propat Int'l Corp. v. RPost Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) (The "right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [  ] all substantial rights under the patent."); *MediaTek, Inc. v. Sanyo Elec. Co. Ltd.*, No. 6:05-cv-323, 2007 WL 5186792, at *6 (E.D. Tex. Apr. 16, 2007).

The operative agreements with IV16 establish that Semcon cannot dispose of the patents-in-suit without IV16's prior written consent.  Semcon argues the prohibition on disposition by IV16 is only temporary and therefore insufficient to establish retained ownership rights.  Dkt. 26 at 17.  By its own admissions, however, Semcon does not <u>currently</u> possess this critical ownership right to the patents-in-suit, and standing is determined at the time of filing.  *See* Dkt.

26 at 15 n.3 ("IV16 <u>currently</u> holds a security interest that requires payment in full of the remaining monetary obligation <u>before</u> Semcon can assign the patent rights . . .) (emphasis added).  The fact that Semcon may at some time in the future come into a full, unencumbered right to dispose of the patents is immaterial.  Semcon did  not have all substantial rights to the patents-in-suit when it filed suit and lacks such rights today. Thus, it lacks prudential standing.

> 2.   *IV16 Retained Future Licensing Rights to the Patents-in-Suit and Limited Semcon's Ability to License the Patents.*

Semcon likewise downplays the significance of the substantial licensing rights retained by IV16, suggesting that IV16 merely transferred the patents subject to previously existing rights.  Dkt. 32 at 5-6.  The R&R stresses the fact that IV16 cannot (presently) license any of the Defendants in this action, suggesting that Semcon's rights are exclusive relative to <u>these</u> Defendants.  Dkt. 32 at 5-6.  This "focus on the parties in suit is misplaced where [the Federal Circuit] has established that the intention of the parties to the Agreement and the substance of what was granted are relevant factors in determining whether all substantial rights in a patent were conveyed."  *Sicom,* 427 F.3d at 979.

Under the operative agreements, IV16 retained <u>future licensing rights for itself</u>.  IV16 can grant nonexclusive, irrevocable, fully paid-up licenses, without geographic restriction, to any Prior Rights Holder.  Dkt. 23-9 at ¶ 3.1(b).  IV16 can extend existing rights to *affiliates* of prior rights holders, meaning IV16 can license to new, unlicensed entities.  *Id.*  And, contrary to Semcon's contention that these rights are "extremely limited," IV16 can exercise these license rights to the extent necessary "to eliminate any liability that [IV16] or any of its affiliates may have to such Prior Rights Holders"—a vague and boundless limitation.  *Id.*  "Prior Rights Holders" have the right to grant sublicenses to subsidiaries, another expansive provision allowing an unidentified group of entities to grant new license rights to an indeterminable

number of subsidiaries. *Id.* at ¶ 3.1(b). And IV16's "Extension Rights" allow it to "renew and extend the term of" and to "modify or amend" preexisting licenses IV16 and/or its affiliates granted in the past. *Id.* at ¶ 1.

Semcon attempts to place form over substance by arguing that the reservation of licensing rights by IV16 was simply a "grant back" of a sublicense; however, the bottom line is that IV16 did not transfer these patents subject to an obligation that the patent owner modify, amend, renew, and extend the term of licenses for prior rights holders and their affiliates. Rather, IV16 reserved this right for *themselves*, with no involvement or approval by the purported current patent owner Semcon. *See,* Dkt. 23-9; 26-2; *IP Innovation L.L.C. v. Google, Inc.*, 661 F. Supp. 2d 659, 665-66 (E.D. Tex. 2009) (The operative agreements provided that "any license inquiries concerning the patents-in-suit must be referred to the [transferee] Plaintiffs."); *MediaTek*, 2007 WL 5186792, at *3, 6 ("The Sarnoff agreement creates a contractual obligation for MediaTek [transferee] to grant new nonexclusive, non-transferable licenses with no right to sublicense under certain conditions. Nowhere in the agreement does Sarnoff [transferor] retain the right to grant new licenses itself.").

Moreover, IV16 prohibited Semcon from granting exclusive licenses or any license with sublicense rights in the future. This prohibition is not simply a reservation of rights by IV16 with respect to prior rights holders. Rather, this is a prospective limitation on the authority of Semcon—the purported assignee—to make its own licensing decisions in the future. *Prima Tek II,* 222 F. 3d at 1380 ("We are further troubled by the fact that the agreement gives Prima Tek I virtually no control over the ability to sub-license the patents. A licensee's right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights.").

Indeed, although the proper focus is on whether Semcon received all substantial rights to the patents in suit, the impairment of Semcon's rights is still significant with respect to this litigation: the parties are required to mediate this action no later than August 1, 2017, but Semcon cannot negotiate a settlement with any of the current Defendants that includes sublicense rights to protect their customers.  This is critical because the Supreme Court is currently considering patent exhaustion issues in *Impression Products, Inc. v. Lexmark International Inc.*, which raises questions regarding whether the authorized sale of a patented article that takes place outside of the U.S. exhausts the U.S. patent rights in that article.  Without the ability to protect the Defendants' international customers, any settlement and license from Semcon is essentially meaningless.  IV16's restrictions to the licensing rights of Semcon and retention of its own licensing rights demonstrate that Semcon did not receive all substantial rights to the patents and lacks independent standing.

        3.    *The Current Right to Enforce the Patents-in-Suit is Not Dispositive With Respect to the Standing Inquiry.*

As noted above, the R&R and Semcon's Opposition make much of Semcon's enforcement rights and their right to remedies.  Dkt. 32 at 7-8.  The R&R notes that Semcon's right "may not be absolute at present," but suggests that the current impairments are theoretical. *Id.* at 7.  Semcon's current enforcement rights, however, are not dispositive to the standing question, and IV16's impairment of Semcon's rights in the patents-in-suit is far from theoretical. As noted above, Semcon cannot negotiate a settlement with any of the current defendants that includes sublicense rights to protect their customers.  This restriction on Semcon's ability to control this litigation and to license its patents is a current and critical impairment.

Likewise, whether Semcon and IV16 cannot both currently sue STI or the other defendants is not the relevant question.  The relevant question is whether IV16 conveyed all

substantial rights to the patents-in-suit.  However, the fact remains that IV16 retained a

reversionary interest in the patents-in-suit.  To the extent Quest is unable to meet any of its

obligations under transfer agreements, ceases to operate or files for bankruptcy, IV16 will

acquire the patents-in-suit.  IV16 could then freely assert the patents themselves or sell them to a

third party, with neither entity bound to any position Semcon has or will take in this lawsuit.

This is borne out by the declarations from IV16 and Semcon that merely state IV16 does not

have critical enforcement or licensing rights "at present."  *See* Dkt. 26-3 at ¶ 18; 26-1, Exhibit 1

at ¶24 (emphasis added).

>     As noted above, to establish prudential standing without all substantial rights, a plaintiff

can join the patentee or owner who transferred the exclusionary interests.  *Morrow*, 499 F.3d at

1340.  At a minimum, IV16 is a necessary party required to be joined to this suit to limit the

possibility of multiple suits brought against the Defendants.  *Id.* at 1340; Fed. R. Civ. P. 19(a).

The limitation to Semcon's rights and existence of multiples parties with rights to the patents-in-

suit is a situation created by Semcon and IV16.  They should bear the burden of this risk.

### B.     Semcon's Complaint Fails to State a Claim Upon Which Relief Can Be Granted

>     Despite the fact that Semcon is asserting 161 claims from the four allegedly distinct

"power management" patents and 17 claims of the "bus controller" patent, Semcon's Complaint

offers generic allegations for all of the patents and fails to identify a single asserted or

representative claim.  While an element-by-element analysis in the complaint may not be

required, Semcon failed to identify *any* of the claimed inventions it alleges STI infringes.

>     STI respectfully disagrees with the R&R that Semcon's Complaint with respect to the

power management patents identifies "the central claim limitations" of the asserted claims.  To

the extent the generic allegation that the claims "call for the frequency generator and power

management logic to be located on the processor itself, rather than in a separate component that would consume power" refers to the requirement that the computer processor on a chip "include[ ]  a clock generator on the chip capable of providing a plurality of clock frequencies which can be individually selected concurrently…," this language was deleted from claim 1 of the '061 Patent during prosecution.  Such an allegation in Semcon's Complaint fails to place STI on notice as to what it must defend against with respect to the 161 issued claims of these patents-in-suit.

STI also respectfully submits that the R&R minimizes this Court's precedent with respect to pleading requirements for indirect infringement.  Despite acknowledging that the allegations are "mostly conclusory," the R&R concludes without explanation that, if these conclusory allegations are true, Semcon has a claim for indirect infringement.  Semcon's allegations, however, offer nothing more than a restatement of the statutory elements of an induced and contributory infringement claim, and conclusory statements that recite the elements of an infringement claim are not entitled to a presumption of truth.  *See Iqbal*, 556 U.S. at 678; *Collins*, 224 F.3d at 498 (A court "will [] not accept as true conclusory allegations or unwarranted deductions of fact.") (quotation omitted).

This Court has explained that Semcon's Complaint must "1) adequately plead direct infringement by defendant's customers; 2) contain facts plausibly showing that defendant specifically intended for its customers to infringe the asserted patents; and 3) contain facts plausibly showing that defendant knew that the customers' acts constituted infringement." *Core Wireless Licensing S.A.R.L.,* 2015 WL 4910427 at *3.  Inducement "requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d

1293, 1306 (Fed. Cir. 2006).  Semcon fails to identify any facts showing specific intent to induce

infringement through a third party, as required to satisfy the *Twombly* and *Iqbal* standard.  *See*

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 4910427 at *3.  Semcon likewise fails

to identify any affirmative steps allegedly taken by STI to bring about the direct infringement, a

"baseline requirement for a defendant's inducement liability."  *Tierra Intellectual Borinquen,*

*Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-cv-38-JRG, 2014 WL 894805, at *6 (E.D. Tex. Mar.

4, 2014).  Dkt. 23-11.

      Semcon's contributory infringement allegations likewise fail to plead facts that allow an

inference that there is an act of direct infringement; that STI knew its components were made for

a patented and infringing combination; and that the components sold or offered for sale have no

substantial non-infringing uses.  *See In re Bill of Lading Transmission and Processing Sys.*

*Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012); *U.S. Ethernet Innovations,* 2013 WL

8482270 at *4.  Semcon cannot identify even a single fact in support of its bare assertions that

STI induced and contributed to the direct infringement of the patents-in-suit by others.  The

inability to plead any facts to support its claims is fatal under the standards set forth in *Twombly*

and *Iqbal* and justifies dismissal of its indirect infringement claims for all five patents-in-suit.

## V.  Conclusion

      For the reasons stated herein, STI asks this Court to dismiss Semcon's Complaint for lack

of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for failure to join a

necessary party pursuant to Fed. R. Civ. P. 12(b)(7), or, in the alternative, dismiss Semcon's

Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ.

P. 12(b)(6).

Dated: March 7, 2017                         Respectfully submitted.


                                             /s/     Thomas N. Tarnay
                                             THOMAS N. TARNAY
                                             Texas Bar No. 24003032
                                             ttarnay@sidley.com
                                             KELLEY A. CONATY
                                             Texas Bar No. 24040716
                                             kconaty@sidley.com
                                             R. SETH REICH, JR.
                                             Texas Bar No. 24088283
                                             seth.reich@sidley.com
                                             SIDLEY AUSTIN LLP
                                             2001 Ross Avenue, Suite 3600
                                             Dallas, Texas 75201


                                             J. MARK MANN
                                             Texas Bar No. 12926150
                                             mark@themannfirm.com
                                             G. BLAKE THOMPSON
                                             Texas Bar No. 24042033
                                             blake@themannfirm.com
                                             Mann Tindel & Thompson
                                             300 W. Main
                                             Henderson, TX 75652

                                             **Counsel for STMicroelectronics, Inc.**

**Certificate of Service**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 7, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/     R. Seth Reich Jr.*