# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SEMCON IP INC., | § | |
| | § | |
| *Plaintiff*, | § | Case No. 2:16-cv-00437-JRG-RSP |
| | § | |
| v. | § | |
| | § | |
| HUAWEI DEVICE USA INC., HUAWEI | § | |
| TECHNOLOGIES USA INC., HUAWEI | § | |
| TECHNOLOGIES CO., LTD., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Huawei moves for leave to join Texas Instruments' motion for summary judgment of no presuit damages, based on the alleged failure of Semcon's predecessor and its licensees to mark products covered by the patents-in-suit as required by 35 U.S.C. § 287(a). Dkt. No. 462. Huawei also moves to supplement its damages report to account for the alleged failure to mark. Dkt. No. 465. For the following reasons, Huawei's motion for leave to join the motion for summary judgment is denied, but the motion to supplement the damages report is granted. Accordingly, because Huawei has met its initial burden of production of notifying Semcon of products covered by the '061 patent that Huawei believes were not marked, Semcon must satisfy its burden of showing compliance with the marking statute at trial.

## DISCUSSION

Under § 287(a) of the Patent Act, a patentee or other party selling a patented product under the patent must mark that product with the patent number to provide notice to the public that the product it may be pursuing is patented. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, No. 2017-1475, 2017 WL 6044237, at *9 (Fed. Cir. Dec. 7, 2017). A patentee's licensees must also

comply with § 287(a) because the statute extends to "persons making or selling any patented article for or under" the patent. *Id.* at *9 (citation omitted) (quoting § 287(a)). Because it may be difficult for a patentee to ensure that licensees are complying with the statute, the Federal Circuit has held that "where third parties are involved, courts may consider 'whether the patentee made reasonable efforts to ensure compliance with the marking requirements.'" *Id.* (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996)).

The patentee has the burden of "pleading and proving" compliance with the marking requirement. *Id.* An accused infringer who challenges a patentee's compliance with § 287(a) bears "an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at *10 (quoting § 287(a)). "[T]his is a low bar." *Id.* The accused infringer must simply "put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id.* The accused infringer must only carry a burden of production, not a burden of persuasion or proof. *Id.* The reason for requiring the accused infringer to satisfy an initial burden of production is to narrow the universe of products that the patentee may have to prove complied with the marking statute. *Id.*

In 2006, Semcon's predecessor, Transmeta, filed a lawsuit against Intel alleging that Intel processors equipped with Enhanced SpeedStep Technology infringed eleven patents, including U.S. Patent No. 7,100,061, one of the four patents Semcon accuses Huawei of infringing. *See* Dkt. No. 268 at 10 (quoting Complaint against Intel ¶ 15). Intel and Transmeta resolved the infringement claims and entered into a settlement and license agreement in December 2007. *See id.* The parties agreed to a non-exclusive license "under Transmeta's Patents" to make, use, sell, offer for sale, or import "Intel Licensed Products" that were alleged to infringe the asserted patents. *Id.* at 11 (quoting License Agreement ¶ 3.2). Semcon has admitted that the license agreement does

not require Intel to mark the products it sells with the asserted patent number. *See* Dkt. No. 268 at 3 (citing Semcon's response to request for admissions).

The other three patents Semcon accuses Huawei of infringing, U.S. Patent Nos. 7,596,708, 8,566,627, and 8,806,247, had not issued at the time Intel and Transmeta resolved the infringement claims. These three patents issued in 2009, 2013, and 2014, respectively. There is no evidence in the record suggesting that the license agreement, when it referred to "Transmeta Patents," was referring to later-issued patents that may cover Intel licensed products. In other words, there is nothing in the record suggesting that Intel and Transmeta agreed that Intel would have the right to practice any patent that might subsequently issue to Transmeta, assuming such a patent covered the licensed products. Accordingly, nothing suggests that Intel had a duty to mark licensed products with later-issued patents—because Intel presumably did not receive a license to such patents. If this is an incorrect characterization of the license agreement, it is because the Court lacks a clear explanation.

Texas Instruments ("TI"), a defendant initially accused of infringement in the consolidated Semcon cases, timely moved for summary judgment that Semcon was not entitled to presuit damages, on the basis that Semcon's predecessors had not required licensees to mark products covered by the asserted patents. *See* Dkt. No. 268. Part of TI's motion was based on Semcon's failure to make reasonable efforts to require Intel to mark products covered by the '061 patent. *See id.* at 10-11. Semcon and TI have since settled. *See* Dkt. No. 476.

After the deadline for filing motions for summary judgment lapsed, Huawei moved to join TI's motion for summary judgment of no presuit damages. Huawei requested leave to join TI's motion with respect to "section IV.B ('Semcon is Not Entitled to Pre-Suit Damages Because it Failed to Comply with the Marking Statute'), subsection 1," which relates to Semcon's failure to

3

make reasonable efforts to require Intel to mark products covered by the '061 patent. *See* Dkt. No. 462 at 1. Huawei did not present a clear basis that it was entitled to summary judgment of no presuit damages with respect to the other three patents-in-suit. The question is whether Huawei should be allowed to pursue a late motion for summary judgment of no presuit damages with respect to the '061 patent, the patent subject to the Transmeta and Intel license agreement.

Huawei contends that the lateness is justified for two reasons. First, because Semcon conceded in October 2017 that it would no longer allege "Huawei had knowledge of the patents prior to the filing of the instant lawsuit." *See* Dkt. No. 305 at 4. Second, because Mr. John Horsley, Transmeta's former general counsel, testified during a recent deposition that neither Transmeta nor its licensees marked products with the patents-in-suit. *See* Dkt. No. 462 at 1-2.

Four factors are relevant when determining whether to excuse a party's failure to adhere to a scheduling order: (1) the explanation for the untimeliness; (2) the importance of the submission; (3) potential prejudice in allowing the submission; and (4) the availability of a continuance to cure such prejudice. *See S&W Enters., L.L.C. v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2004).

Huawei's explanation for the untimely motion is largely unsatisfactory. The agreement between Transmeta and Intel was produced to Huawei well before the dispositive motions deadline. *See* Dkt. No. 480 at 4-5. This agreement alone could have formed the basis for a timely motion for summary judgment. Like TI, who timely moved for summary judgment, Huawei had every opportunity to pursue a motion of no presuit damages on the basis of the Transmeta/Intel license agreement. Semcon's recent concession that Huawei did not have presuit knowledge of the patents-in-suit relates to Semcon's former allegations of indirect infringement. Semcon's change in course did not inform Huawei that Semcon failed to provide Huawei with actual

notice of the '061 patent before filing suit. Even if Semcon's change in course had alerted Huawei to the marking issue, Huawei should have been aware of Semcon's presuit damages contentions by virtue of Semcon's damages report, which Semcon was required to provide Huawei no later than September 11, 2017. *See* Dkt. No. 235 at 4.

Huawei's late motion is unquestionably important because the motion relates to Huawei's exposure to presuit damages with respect to infringement of the '061 patent. There is prejudice in allowing the late motion, however. Semcon's first notice that Huawei would seek to restrict damages, through a late summary judgment motion, came on November 28, 2017, about a month before trial. See Dkt. No. 462. Huawei's deadline for filing a summary judgment motion lapsed on October 9, 2017. The motion was about seven weeks too late—a significant delay given the Court's compressed schedule leading up to trial.

The prejudice is mitigated, however, because Semcon was provided timely notice of the same issue by TI. By identifying a complaint in which Semcon's predecessor accused Intel products of infringing the '061 patent, which resulted in the relevant license agreement between Transmeta and Intel, TI met its initial burden of production. *See Arctic Cat*, 2017 WL 6044237, at *10. Thus, Semcon has been on notice, since October 9, that it would have to prove compliance with the marking statute.

Finally, any continuance would delay trial, which is about three weeks away. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 537 (5th Cir. 2003) (affirming district court's refusal to grant continuance when it would "unnecessarily delay the trial"). In sum, while Huawei's explanation for the untimeliness is not satisfactory, the marking issue is important, and the prejudice to Semcon is minimal. The relevant factors therefore weigh in favor of allowing Huawei to pursue the marking dispute.

5

The question of whether Huawei should be entitled to a summary determination of the marking dispute is nevertheless more complicated. The Federal Circuit recently clarified that the patentee bears the burden of pleading and proving compliance with the marking statute, while the accused infringer must carry only a minimal, initial burden of production *Arctic Cat*, 2017 WL 6044237, at *10. Semcon's response to TI's original motion assumed that TI had a more significant burden in proving noncompliance with the marking statute, and Semcon's view was arguably justified based on some uncertainty in the law prior to *Arctic Cat*. As a result, Semcon's briefing is largely inadequate under current law. Even if the Court allowed Huawei to join TI's motion for summary judgment, the Court would not have an adequate basis to consider the motion without updated briefing that contemplates the Federal Circuit's recent guidance. Trial is scheduled to begin less than three weeks away, and there is not adequate time for updated briefing. In sum, given Huawei's untimeliness, the recent clarification by the Federal Circuit in *Arctic Cat*, and the lack of adequate briefing on the now-controlling standard, a summary determination of the marking dispute is not appropriate.

This does not mean, however, that Semcon is relieved of its duty to prove compliance with the marking statute at trial, at least with respect to the '061 patent and the products Transmeta accused of infringing the '061 patent in the prior litigation. Semcon and TI only recently settled, and Semcon should have been preparing to confront the marking issue in the case against TI. Huawei satisfied its initial burden of production by requesting leave to join TI's motion for summary judgment, a burden of production that had long since been met by TI. Thus, while Huawei is not entitled to summary judgment, Semcon is not entitled to insulation from the marking issue. Accordingly, if Semcon asserts the '061 patent at trial, Semcon must carry the burden of proving compliance with the marking statute for the licensed Intel products alleged by Transmeta

to infringe the '061 patent.

Finally, because Huawei's supplemental damages report merely cuts off damages prior to when the lawsuit was filed, based on the alleged failure to mark, there is no harm in allowing the supplemental report. To be clear, however, the record suggests only that Huawei has satisfied its initial burden of production with respect to Intel products accused by Transmeta of infringing the '061 patent. Huawei's supplemental expert report also appears to cut off presuit damages for the other three patents-in-suit. Without a showing that Huawei's initial burden of production has been met with respect to the other three patents, there is no clear basis to conclude that Semcon must also prove compliance with the marking statute with respect to these other three patents. If Huawei has met this burden, and the Court has missed something, Huawei can explain the oversight at the final pretrial conference.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

(1) Huawei's motion for leave to join TI's motion for summary judgment of no presuit damages, Dkt. No. 462, is denied.

(2) Although Huawei is not entitled to summary judgment, Huawei has satisfied its initial burden of production with respect to Intel products allegedly sold under the '061 patent. Consequently, Semcon must prove compliance with the marking statute at trial—in other words, that the Intel licensed products do not infringe the '061 patent.

(3) Huawei's motion to supplement the damages report, Dkt. No. 465, is granted.

**SIGNED this 12th day of December, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE