# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SEMCON IP INC., § | |
| § | |
| *Plaintiff*, § | Case No. 2:16-cv-00437-JRG-RSP (Lead) |
| § | |
| v. § | Case No. 2:16-cv-00438-JRG-RSP (Member) |
| § | |
| MEDIATEK INC., MEDIATEK USA INC., § | |
| § | |
| *Defendants*. § | |

## REPORT AND RECOMMENDATION

MediaTek moves for summary judgment of (1) no direct infringement of the patents-in-suit; and (2) no indirect infringement of the patents-in-suit before Semcon's lawsuit was filed. Dkt. Nos. 309 and 315. The relief requested by MediaTek should be granted-in-part as follows.

## DISCUSSION

Summary judgment must be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012). The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a party has made that showing, the non-moving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323). The non-moving

party cannot "rest upon mere allegations or denials" in the pleadings, but "must set forth specific facts showing there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

1. **Motion for Summary Judgment of No Direct Infringement (Dkt. No. 309)**

Section 271(a) of the Patent Act provides in relevant part that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a). "It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007). MediaTek contends that it has not made or sold accused products within the United States, i.e., that MediaTek has not directly infringed the patents-in-suit. Semcon argues that a MediaTek contract with Amazon constitutes a sale within the United States and that there is evidence establishing that MediaTek has sold at least some accused products in the United States.

The parties dispute whether the Amazon contract constitutes a "sale" recognized by the patent statute. Although the statute does not define the term "sale" in § 271(a), the Federal Circuit has explained that "the ordinary meaning of a sale includes the concept of a transfer of title or property." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005); *see also* U.C.C. § 2-106. A sale may not be "limited to the transfer of tangible property" and may be determined by "the agreement by which such a transfer takes place." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311 (Fed. Cir. 2010). But "the location of actual or anticipated performance under a 'contract for sale' remains pertinent

to the transfer of title or property from a seller to a buyer." *Halo Elecs, Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1378 (Fed. Cir. 2016). "[W]hen substantial activities of a sales transaction, including the final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract, occur entirely outside the United States, pricing and contracting negotiations in the United States alone do not constitute or transform those extraterritorial activities into a sale within the United States for purposes of § 271(a)." *Id.* at 1378.

The Amazon agreement is merely a supply contract or general purchase agreement that governs any future sales. The agreement is not itself a sale. Essential binding terms, including price and quantity, are not included. The agreement correlates price and quantity ranges, for example if between "0 and 5,000,000 units" are purchased, the price per unit is identified. *See* Dkt. No. 309-9 at MTK0182956. But the agreement's reference to "0" units confirms that the agreement does not bind MediaTek or Amazon into an actual sale of any specific product. Consistent with the price and quantity tables, the agreement makes clear that "[a] Purchase Order is Supplier's only authorization to ship Product units to Purchase," and that "Purchaser will have no obligation to . . . place any Purchase Order." *Id.* at MTK0182906, MTK0182912. Without essential binding terms, the Amazon agreement cannot constitute a "sale" of the accused product within the United States. *See Halo*, 831 F.3d at 1378 ("Although Pulse and Cisco had a general business agreement, that agreement did not refer to, and was not a contract to sell, any specific product.").

Semcon's arguments to the contrary are not persuasive. Semcon emphasizes that the Amazon agreement may contemplate MediaTek delivering source code for the accused products to Amazon in the United States. Dkt. No. 396 at 11. As Semcon has admitted during multiple hearings, however, software is not an accused product, and software cannot infringe by itself. *See, e.g.*, Hr'g Tr. at 10:11-13:5, Dkt. No. 517. Semcon also emphasizes that the Amazon agreement

3

was signed by representatives "based in the United States." Dkt. No. 396 at 11. There is no evidence of that, however, and even if there were, the signing of a general purchase agreement would be a small element of the overseas contracting and negotiation efforts—not enough to overcome the presumption against extraterritoriality when most of the other activities related to actual sales occurred overseas. *See Halo*, 831 F.3d at 1378 ("Any doubt as to whether Pulse's contracting activities in the United States constituted a sale within the United States under § 271(a) is resolved by the presumption against extraterritorial application of United States laws."). Finally, Semcon emphasizes that MediaTek knew that accused devices would end up in the United States, *see* Dkt. No. 396 at 11, but "[m]ere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a)." *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1377 (Fed. Cir. 2005). Thus, the Amazon contract is not a sale, and cannot by itself without other evidence constitute an offer to sell.

Having concluded that the Amazon agreement is not a sale within the United States, the next dispute concerns what MediaTek refers to as "*de minimis*" sales. *See* Dkt. No. 309 at 7. MediaTek acknowledges that the record includes evidence regarding two shipments of products at least tangentially related to the United States. *Id.* at 4. The first involves a shipment of 200 units of a particular accused product sold to Acumulus9, Inc., a United States company, but shipped to an address in China. *Id.* MediaTek records indicate that the 200 units were free samples. *Id.* The second shipment involved 340 units of another accused product sold to ATM Electronic Corporation in Hong Kong, but shipped to Whizz Systems, Inc. in the United States. *Id.* Both of these categories of shipments, according to MediaTek, constitute such a small portion of the alleged hundreds of millions of accused units that they can be disregarded.

MediaTek's *de minimis* infringement theory comes from a Second Circuit case which noted that if an accused product infringes a patent "only lamely and spasmodically," the infringement is not material, or any infringement would be "of too trifling importance to justify the intervention of a court." *See Condenser Corp of Am. v. Micamold Radio Corp*, 145 F.2d 878, 880 (2d Cir. 1944) (Hand, J.). The circumstances of this Second Circuit case, however, were different than those of this case, namely the fact that this case concerns alleged infringement of millions of product units, whereas *Condensor Corp* dealt with only a single allegedly patented machine. Accordingly, the Court does not accept MediaTek's *de minimis* infringement theory.

The question of whether the so-called *de minimis* sales preclude summary judgment nevertheless remains. As for the shipment to Acumulus9, MediaTek records indicate that these shipments involved only free samples, and there is no evidence that the products were sold for a price. A sale requires the transfer of title from seller to buyer "for a price." *See* U.C.C. § 2-106; *Halo*, 831 F.3d at 1378. A free sample does not qualify.

The shipments to ATM Electronic are different. Because MediaTek or an authorized agent presumably shipped these units directly to the United States, a reasonable jury could conclude that transfer of title took place in the United States, and thus that a sale occurred in the United States. *See Halo*, 831 F.3d at 1378. Alternatively, a reasonable jury might conclude that MediaTek imported these products under § 271(a). Thus, MediaTek's motion for summary judgment of no direct infringement should be denied, subject to the Court's determination that the Amazon contract and any free samples provided to Acumulus9 do not constitute acts of direct infringement.

### 2. Motion for Summary Judgment of No Indirect Infringement (Dkt. No. 315)

The Patent Act provides for two types of indirect infringement: induced and contributory infringement. 35 U.S.C. § 271(b) and (c). A party is liable for induced infringement only where it

successfully communicates with and induces a third-party direct infringer. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016). To prevail on an induced infringement claim, the plaintiff must prove that a defendant's actions led to direct infringement of the asserted patents, or in other words that the defendant's actions induced a third party to directly infringe. *See id.* This requires "active inducement," which may be proven by direct or circumstantial evidence. *See id.* Contributory infringement requires, among other things, knowledge of the asserted patents and proof that the defendant knew the induced acts were infringing. *See, e.g.*, *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016). Willful blindness can satisfy the knowledge requirement for active inducement under § 271(b) or for contributory infringement under § 271(c), in the absence of actual knowledge. *See id.* Both types of indirect infringement requires direct infringement by one or more parties. *See Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 948 (Fed. Cir. 2016) ("[I]ndirect infringement is predicated on direct infringement."); *see also Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1376 (Fed. Cir. 2017) (discussing divided indirect infringement).

    a) **Acts of Direct Infringement**

Semcon's theory of indirect infringement appears to be that MediaTek supplied chips to phone and tablet manufacturers who then sold those phones and tablets to end users within the United States. *See, e.g.*, Carbonell Rep., App'x A at 15-16, Dkt. No. 392-2. Although Semcon's expert did not test any accused device to determine whether the device infringed, the expert did provide claim charts with documentary evidence showing the theory of how the devices infringe. *See, e.g.*, *id.* It is not clear, however, whether Semcon is contending that the phone and tablet manufacturers are the direct infringers, or whether end-users are the direct infringers. The theory must be the former because Semcon does not point to any evidence in the record that any phone

6

or tablet manufacturer actually sold a device with a chip allegedly covered by the patents-in-suit within the United States, or that any end customer used an accused device within the United States. In other words, Semcon's theory must be that the domestic device sellers are using or selling the devices in violation of § 271(a).

Semcon produced evidence that accused devices were sold to Amazon, and MediaTek does not dispute this contention. It also appears that MediaTek does not dispute Semcon's apparent assumption that Amazon used or sold the accused devices within the United States. *See id.* For this reason, summary judgment of no indirect infringement is not warranted.

### b) Pre-Suit Knowledge

The second basis for MediaTek's summary judgment motion relates to MediaTek's knowledge of the patents-in-suit, or lack thereof. *See* Dkt. No. 315 at 5. MediaTek contends that there is no evidence that MediaTek had knowledge of the '708, '627, and '247 patents prior to when Semcon filed the complaint. *See id.* Semcon does not dispute this statement. *See* Dkt. No. 392 at 2 ("MediaTek first learned of the '708, '627, and '247 patents on April 25, 2016, when Semcon filed its Complaint in this action." Semcon's Response: "Undisputed."). Consequently, MediaTek is entitled to summary judgment of no pre-suit indirect infringement of the '708, '627, and '247 patents because knowledge of the patent is required for an indirect infringement claim. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011) (§§ 271(b) and (c) require "knowledge of the existence of the patent that is infringed").

Semcon's indirect infringement claims are also based on a fourth patent, the '061 patent. MediaTek argues that summary judgment of no pre-suit indirect infringement of this patent is necessary because there is no evidence that MediaTek knowingly induced or contributed to a third party's direct infringement before Semcon filed its complaint. *See* Dkt. No. 315 at 5 (citing *DSU*

*Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). The parties agree that MediaTek first learned of the '061 patent on May 25, 2012, when the '061 patent was cited in invalidity contentions in a case in which MediaTek alleged that Freescale Semiconductor was infringing a MediaTek patent. *See* Dkt. No. 392 at 2, ¶ 2. Semcon's theory of pre-suit indirect infringement appears to be that because the MediaTek patent (the '331 patent) and the '061 patent cover related technology, and because Freescale contended that the '061 patent anticipated or rendered the '331 patent obvious, a reasonable jury could conclude that MediaTek had pre-suit knowledge that it was inducing or contributing to its customers' alleged direct infringement. *See* Dkt. No. 392 at 9. Although the Freescale litigation involves somewhat different technology than that covered by the '061 patent, whether the Freescale litigation could have given rise to pre-suit knowledge of the '061 patent and knowledge that the accused products infringe that patent, are disputed questions of fact. Accordingly, MediaTek's motion for summary judgment of no indirect infringement, as it relates to the '061 patent, should be denied.

## CONCLUSION

For the foregoing reasons, the Court recommends that MediaTek's motions for summary judgment be resolved as follows:

(1) MediaTek's motion for summary judgment of no direct infringement, Dkt. No. 309, should be denied, subject to the Court's determination that the Amazon contract and any free samples provided to Acumulus9 do not constitute acts of direct infringement.

(2) MediaTek's motion for partial summary judgment of no indirect infringement, Dkt. No. 315, should be granted as to any claims of pre-suit indirect infringement of the '708, '627, and '247 patents. The motion should otherwise be denied.[1]

**SIGNED this 7th day of March, 2018.**

                                        ROY S. PAYNE
                                        UNITED STATES MAGISTRATE JUDGE

---

[1] A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days from the entry of this Order shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).